869 F.2d 1490
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Sidney Eleanor GIRDNER, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 88-1368.
 United States Court of Appeals, Sixth Circuit.
 March 14, 1989.
 
 Before KEITH, NATHANIEL R. JONES and RALPH B. GUY, Jr., Circuit Judges.
 PER CURIAM.
 
 
 1
 Claimant, Sidney Eleanor Girdner, appeals from the denial of social security disability benefits. Since we find that substantial evidence supports the Secretary's denial of benefits, we affirm.
 
 I.
 
 2
 This case is unusual in that claimant did not file for benefits until twenty-six years after the alleged onset date of her disability. When the application for benefits was filed on February 1, 1984, it was done with the recognition that claimant's insured status expired on September 30, 1959. Since claimant had worked until March 14, 1958, this left a rather narrow window of time in which an onset date would have to fall. It is not surprising then that the medical records and other objective data in support of Girdner's claim are sparse. Notwithstanding this fact, it is clear that claimant has a history of some serious medical problems. What is much less clear is their effect on her ability to work during the relevant period.
 
 
 3
 In 1954, at age seventeen, Girdner went to work as a clerk-typist for the Employment Security Commission of the State of Michigan. She was a high school graduate who had been married one year earlier at age sixteen. Girdner worked until July 7, 1955, when she took a medical leave after thyroid cancer had been discovered. She underwent a thyroidectomy, right radical neck dissection, and a tracheostomy. In 1956, claimant returned to her former job and worked until March 14, 1958, when she quit to have a baby, which was delivered on June 22, 1958. Girdner never returned to work.
 
 
 4
 In her original 1984 application for benefits, claimant alleged her disability to be "complications caused by cancer surgery and radiation treatments resulting in [a] tracheostomy...." (App. 208). After the application was denied at all preliminary levels, a hearing was held before an administrative law judge (ALJ). Since claimant had returned to her job after the cancer surgery and only left it to have a baby, it is not altogether surprising that her counsel interjected a new basis for disability before the ALJ. For the first time there was a reference to mental impairments as a basis for disability. Benefits were denied, but when the case was appealed to federal court, it was remanded for the purpose of evaluating Girdner's allegations of mental impairment under the then recently enacted Social Security Disability Benefits Reform Act of 1984.
 
 
 5
 On remand, a de novo review was undertaken of all evidence, new and old, and benefits were again denied. This matter was then reinstated before the district court on July 22, 1987, at which time the district judge adopted a magistrate's recommendation and found that substantial evidence supported the Secretary's denial of benefits.
 
 II.
 
 6
 On appeal, Girdner's primary argument is that the Secretary failed to consider her impairments in combination, and had he done so, disability would have been established. We disagree.
 
 
 7
 To begin with, it is obvious that the ALJ realized his task was to consider any and all impairments in combination. In the ALJ's recommended decision on remand, he states:
 
 
 8
 The purpose of the remand is to give further consideration to the psychological status and the combined effect of any psychological impairment with the claimant's physical status....
 
 
 9
 (App. 207) (emphasis added).
 
 
 10
 Similarly, when the case returned to the district court, the magistrate also noted that the purpose of the remand "was to allow the Secretary to consider plaintiff's psychiatric impairment and the combined effect of all of plaintiff's impairments." (Magistrate's Report and Recommendation at 8).
 
 
 11
 The second problem is that impairments in combination only become relevant when the combination produces a result more disabling than any one individual impairment. Since claimant's first hearing determined that her status post-1955 thyroidectomy did not in any way keep her from performing her past work, to which she had returned after the operation, there was really nothing to consider in combination with the mental impairment.[1]
 
 
 12
 As for the mental impairment itself, without reviewing the sketchy medical history in detail, suffice it to say that any objective medical evidence of arguable significance was developed long after claimant's insured status expired. For the eighteen-month period that existed between claimant's last date of employment and the expiration of her insured status, the most that can be said is that she went through a period of post-partum depression coupled with continuing concern about her long-range medical prognosis. There is no evidence that this reached disabling proportions, however.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 We reject claimant's argument that although she returned to work after her surgery, she was not performing substantial gainful activity